**UNITED STATES of America**
**v.**
**George James HOPKINS.**
**Cr. No. 24167.**

United States District Court
D. Maryland.
Sept. 1, 1960.

George James Hopkins, pro se.

Leon H. A. Pierson, U. S. Atty., Martin A. Ferris and H. Russell Smouse, Asst. U. S. Attys., Baltimore, Md., for the United States.

THOMSEN, Chief Judge.

This motion to vacate sentence, filed under 28 U.S.C.A. § 2255, is unusual in that it alleges violation of the Thirteenth Amendment, as well as of the Fifth, Eighth and Fourteenth.

Defendant was found guilty on seven counts of stealing from authorized receptacles for mail, and is now serving a three year sentence. The bizarre facts leading up to his arrest, indictment and conviction were offered in evidence at his trial and are set out at length in United States v. Hopkins, D.C.Md., 169 F.Supp. 187.

Defendant was arrested for these offenses on November 12, 1957. After a hearing before the United States Commissioner he was taken to the Baltimore City jail. On November 17 he was found in a state of hysteria, and was taken to the United States Public Health Hospital, where after treatment, see 169 F.Supp. 192, he was found to be depressed and emotionally disturbed but legally sane, and was returned to the jail hospital. Then, as found at the trial:

"Early in January 1958, following a visit to the jail by Ruth, who had pleaded guilty and been placed on probation, Hopkins threatened suicide, and was considered so seriously ill that he could not be kept in the jail hospital. Neither St. Elizabeth's Hospital nor the VA Hospital at Perry Point was able to admit him, so with the approval of his court-appointed attorney Hopkins was taken to the prison hospital at Lewisburg. There, for nine months, he received the devoted attention of Dr. Manly B. Root, the prison psychiatrist. After a number of interviews, including one under sodium pentathol, Dr. Root found that Hopkins had a practically complete amnesia [for certain periods]. * * * Dr. Root obtained permission for Hopkins to work as an inmate; he worked well and was well liked.

"On February 21, 1958, Dr. Root reported to counsel for the government and for the defendant that, in his opinion, Hopkins was not psychotic but was not able to assist in his defense because of a psychoneurotic dissociative reaction of the hysterical type. He felt that Hopkins had at least two personalities; one from the spring of 1956 to January 1958, and another from January 1958 on, and that the latter did not know what the former had done. He felt then that Hopkins was sane and responsible for his acts in both personalities, but because of an hysterical amnesia was unable to assist in his defense." 169 F.Supp. 192, 193.

On April 16, 1958, after a hearing under 18 U.S.C.A. § 4244, the Court found that defendant was mentally incompetent to assist in his defense, and in conformity with 18 U.S.C.A. § 4246, ordered that defendant be "committed to the custody of the Attorney General until he shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law."

In view of the interest which Dr. Root had taken in the case, and the help which he seemed to be giving defendant, without objection from defendant or his attorney, defendant was returned to Lewisburg and Dr. Root resumed his treatments. Defendant began to regain his memory, and a report of three physicians, dated August 15, 1958, concluded that the differential diagnosis lay "between (1) a psychopathic personality without further complications, (2) a psychoneurotic dissociative state, (3) a frankly psychotic episode, and (4) a complication of the first with either of the other two". The doctors were "inclined to consider" this to be a case of psychopathic personality, with a psychotic episode of the schizophrenic type, the psychotic phase having passed. 169 F.Supp. 193. Dr. Root continued to interview and treat defendant and defendant continued to work as an inmate at Lewisburg until his return to Baltimore October 1, 1958. He was arraigned shortly thereafter and tried as promptly as possible.

Defendant bases his present motion on three alleged violations of his constitutional rights.

(1) He contends that when he was first taken to Lewisburg he was placed in solitary confinement in the "hole", a

place of punitive segregation, which amounted to cruel and unusual punishment, and that he was denied the right to contact his attorney and his family for four days. The government denies that he was placed in the "hole" or was punished in any way, and states that he was placed in administrative segregation because of his suicidal tendencies. It is not necessary to hold a hearing to resolve the factual issue because (a) in either event, his segregation was for his own protection and not as punishment for anything he had done, (b) there is no allegation that he made any effort to contact his attorney or his family during the four day period, and the court knows that he was in frequent communication with his attorney during his stay at Lewisburg, and that his attorney was in touch with Dr. Root and with the court, and (c) most importantly, that no complaint of this nature was made to the court by defendant or his attorney at any time before or during the trial, or until this motion was filed.

(2) Defendant contends that his being compelled to perform prison labor from May 18 to October 1, 1958, without a prior conviction, constituted involuntary servitude under the Thirteenth Amendment. The evidence at the trial showed that Dr. Root arranged for defendant to mingle and work with the prisoners at Lewisburg as a therapeutic measure. Defendant says that he worked "under threat of punishment", but he does not allege that any such threats were made to him by anyone in authority. Neither defendant nor his attorney objected to such work before or at the trial; to the contrary, defendant has repeatedly written letters to me expressing his appreciation for Dr. Root's kindness and help. Indeed, there is a similar statement in the pending motion.

(3) Defendant contends that he was "abducted" by the Marshal in January 1958 and taken from Baltimore to Lewisburg without an "extradition warrant" or a hearing in open court to defend his right not to be taken from the State of Maryland by force and compulsion. He further claims that he should have had the right to consult with his attorney before being so removed. In fact, as the record shows, he was incompetent, violent and suicidal at the time, so that the warden of the jail was unwilling to keep him there; he needed immediate hospitalization, and since neither St. Elizabeth's nor the VA Hospital would admit him, the Marshal, in whose custody he was, removed him, with the approval of his attorney, to the prison hospital at Lewisburg. In any event, neither defendant nor his attorney made any point of such transfer either before or at the time of the trial.

■■ Since none of these points was raised at the trial or on appeal from the conviction, they cannot now be raised on a motion under § 2255, especially since they do not go to the validity of the judgment or commitment under which the defendant is now serving. United States v. Angelet, 2 Cir., 265 F.2d 155; Taylor v. United States, 4 Cir., 177 F.2d 194; Dockery v. United States, 4 Cir., 237 F.2d 518, certiorari denied 353 U.S. 912, 77 S.Ct. 670, 1 L.Ed.2d 666; Sanders v. United States, 4 Cir., 230 F.2d 127, certiorari denied 351 U.S. 955, 76 S.Ct. 852, 100 L.Ed. 1478. Since the record clearly shows that no relief can be given under the pending motion, a hearing on the motion is not required. Meredith v. United States, 4 Cir., 208 F.2d 680.

The motion is hereby denied. The clerk is instructed to send a copy of this memorandum opinion to the defendant.